# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| LOIS JONES, | * |
| *Plaintiff*, | * |
| v. | * Case No. RWT 17-cv-1577 |
| SPECIALTY LENDING GROUP, L.L.C., *et al.*, | * |
| *Defendants*. | * |

## MEMORANDUM OPINION

Plaintiff Lois Jones ("Jones") is a resident of Maryland. ECF No. 1 ¶ 12. She owns a commercial property located at 337 H Street, N.E., Washington, D.C. (the "Property"). *Id.* ¶ 14. Defendant Specialty Lending Group, L.L.C. ("SLG") is a Maryland "hard money lender" and extends loans to consumers throughout the Washington Metropolitan Area. *Id.* ¶ 15. Defendant Jeffrey Levin ("Levin") is the sole-owner and president of SLG. *Id.* ¶ 16. Defendant Stephen D. Ruben ("Ruben") is the Executive Director of PBX Settlement Services L.L.C. ("PBX"), the Maryland-based company that performed the loan closing at issue in this case. *Id.* ¶ 17. Defendant Joel Aronson, Esq. ("Aronson") is a licensed attorney who, during the time relevant to this case, was counsel for SLG and was listed as trustee in the Deed of Trust at issue. *Id.* ¶ 18.

### 1. Background Facts

This case arises out of a loan transaction between Jones and SLG. At a time before December 9, 2015, Jones applied to SLG for a cash-out refinance of the Property. *Id.* ¶ 1. SLG approved her for a one-year loan in the amount of $172,000.00, secured by the Property. *Id.* The dispute centers around what took place at, and subsequent to, the closing on

December 9, 2015.  Jones alleges that she expected to receive approximately $100,000 net of costs and expenses at the closing.  *Id.* ¶ 2.  Instead, however, PBX only distributed $15,000 through a wire transfer after the closing, not the $100,000 she claims was set forth in the HUD-1.  *Id.*  Although there is some discrepancy as to how much money has been distributed to Jones, she attached the most recent Payoff Statement, dated May 31, 2017, which states the purported payoff amount to be $129,232.69.[1]  *Id.* ¶ 4; ECF No. 1-6.  Jones asserts that Ruben could not explain why she did not receive the full $100,000 at the closing as expected, and Levin failed to return any of her emails or phone calls inquiring of the same.  ECF No. 1 ¶¶ 2–3.

On January 26, 2016, Jones asserts that Defendants informed her that in order to receive the remaining balance of the loan, she would need to have the Property inspected and appraised.  *Id.* ¶ 34.  Jones claims that at no time before January 26, 2016 was the issue of an appraisal raised with her or made a condition of the loan.  *Id.* ¶ 35.  Defendants claim that an appraisal was discussed but because Jones had sought the loan for urgent financial and personal reasons, SLG agreed to Jones's request to close without an appraisal with the understanding that an appraisal would be done immediately after closing.  ECF No. 7 at 2.  SLG claims that Jones even had a meeting scheduled with an appraiser, which Jones cancelled and then failed to show up for the rescheduled date.  *Id.* at 2–3.

Jones further alleges that the purported notary public who originally signed the loan documents was not actually present at the closing.  *Id.* ¶ 5.  The documents were then later "retroactively corrected" by Ruben, who had been present at the closing, but whose notary public commission had expired and was only reinstated the day after the closing.  *Id.*  The loan documents were filed with the D.C. Office of the Recorder of Deeds with Ruben's signature as

---

[1] Jones also attached a Payoff Statement dated February 15, 2016, which states the payoff amount to be $66,495.55.  ECF No. 1-6.

notary. *Id.* ¶ 6. Jones claims that she expressed her concerns about the closing to Aronson in his capacity as trustee, but Aronson failed to correct the loan documents and only acted in the interest of his client, SLG. *Id.* ¶ 10.

### 2. Procedural History

Jones first took action regarding the loan transaction at issue by filing a five-count complaint in February 2016 against SLG in the Superior Court for the District of Columbia, claiming that SLG did not meet its obligations under the terms of the loan promissory note and that it filed a false Deed of Trust (the "first D.C. court case"). *Jones v. Specialty Lending Group, LLC*, No. 2016 CA 000775 (D.C. Super. Ct. Apr. 25, 2016), ECF No. 7-1. After Jones filed an amended complaint alleging the same factual basis for the claims, SLG filed a motion to dismiss for improper venue pursuant to the forum selection clause contained within the promissory note, which states "that all disputes and matters whatsoever arising under, in connection with, or incident to this Note shall be litigated, if at all, in and before a state or federal court located in Montgomery or Prince George's County Maryland . . . ." ECF No. 7 at 4. On April 25, 2016, Judge Michael L. Rankin dismissed Jones's amended complaint for improper venue, finding the forum selection clause valid. ECF No. 7-1.

Instead of filing in Montgomery or Prince George's County, Jones initiated a second law suit in the Superior Court of the District of Columbia against SLG, the D.C. Government, and PBX (the "second D.C. court case"). *Jones v. Specialty Lending Group, LLC*, No. 2016 CA 004850 (D.C. Super. Ct. May 8, 2017), ECF No. 7-2. Jones claimed that the loan documents were not properly notarized and thus were filed in violation of D.C. law. ECF No.7-2. Jones sought declaratory judgment regarding the legality and validity of the recorded Deed of Trust and the Security Affidavit. *Id.* SLG again filed a motion to dismiss based on the forum selection

3

clause. *Id.* PBX also filed a motion to dismiss based on Jones's failure to state a claim against it. *Id.* On May 8, 2017, Judge Marisa J. Demeo dismissed with prejudice Jones's complaint in its entirety as to both SLG and PBX. *Id.* That case is currently pending appeal in the District of Columbia Court of Appeals. ECF No. 7 at 5 n.1.

On April 10, 2017, SLG filed a complaint against Jones in the Circuit Court for Prince George's County based on her failure to make any payments under the promissory note. *Id.* at 5. On May 15, 2017, the Circuit Court entered judgment against Jones for $128,207. *Id.* A foreclosure sale was set for June 14, 2017. *Id.* Jones filed a voluntary petition for bankruptcy in the U.S. Bankruptcy Court for the District of Maryland in order to prevent foreclosure. *Id.* Because Jones failed to file the required schedules and other documents, her bankruptcy petition was dismissed on July 19, 2017. *Id.*

While her bankruptcy petition was still pending, Jones filed the instant Complaint on June 8, 2017. *Id.* In it she brings five counts against Defendants based on the same facts underlying her two D.C. court cases: (1) Count I asserts deceit and fraud against SLG, Levin, Ruben, and PBX; (2) Count II asserts intentional or negligent misrepresentation claims against SLG and Levin; (3) Count III[2] asserts a breach of trustee's fiduciary duty claim against Aronson; (4) Count IV asserts a Racketeer Influenced and Corrupt Organizations ("RICO") Act claim against all Defendants; and (5) Count V asserts a breach of contract claim against SLG and Levin. *Id.* In total, Jones prays for approximately $7 million in damages for the alleged fraud and misconduct related to the loan transaction. *Id.*

All Defendants filed motions to dismiss the Complaint. ECF Nos. 6, 7, 9. PBX and Ruben adopted and incorporated by reference SLG and Levin's and Aronson's motions.

---

[2] The Complaint mislabels Count III as a second Count II, but the Court will refer to it as Count III for clarity.

ECF No. 11. As a preliminary matter, Defendants argue that *res judicata* applies to preclude this case from moving forward based on Judge Demeo's dismissal with prejudice in the second D.C. court case. Even if *res judicata* does not apply, Defendants argue the case here is premature given that the second D.C. case is pending on appeal and causes of actions should not be split. Regarding the merits of the Complaint, Defendants assert that the RICO count fails to state a claim and should be dismissed. Aronson, PBX, and Ruben allege that all the counts against them fail to state a claim. For the reasons discussed below, the Court will grant Defendants' motions to dismiss.

### 3. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) serves "to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In order to be sufficient to survive dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, courts must consider "all well-pleaded allegations in a complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe all factual allegations in the light most favorable to the plaintiff." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must put forth "plausible claim[s] for relief." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 4. *Res Judicata*

Defendants contend that because (1) Jones's second D.C. court case was dismissed by Judge Demeo in its entirety with prejudice, (2) that case was based on the same facts as the case here, and (3) the parties were the same, claim preclusion applies to bar the instant case from moving forward. ECF Nos. 6 at 4; 7 at 9; 11.

The doctrine of *res judicata* prohibits parties from relitigating claims that have been resolved by courts of competent jurisdiction. *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 336 (2005). "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The doctrine encompasses both claim preclusion and issue preclusion.

Under claim preclusion, the doctrine in question here, "a final judgment on the merits 'embodies all of a party's rights arising out of the transactions involved,' *Stutsman v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 546 A.2d 367, 370 (D.C. 1988), and precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding." *Carr v. Rose*, 701 A.2d 1065, 1070 (D.C. 1997) (citing *Molovinsky v. Monterey*

6

*Coop.*, 689 A.2d 531, 533 (D.C. 1997)). An adjudication on the merits, thus, "estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented." *Id.* (citing *Molovinsky*, 689 A.2d at 533). The doctrine, therefore, "bar[s] the relitigation of claims previously adjudicated, and [] merge[s] into the prior judgment any available claims that plaintiff failed to raise in the antecedent litigation, preventing their consideration in a new action." *Smith v. Jenkins*, 562 A.2d 610, 613 (D.C. 1989).

For the instant case to be precluded in this Court, Defendants must show that the second D.C. court case involved (1) the same claim or cause of action, (2) the same parties or their privies, and (3) a final, valid judgment on the merits. *See Crockett v. Mayor of District of Columbia*, No. 16-1357 (RDM), 2017 WL 4286184, at *5 (D.D.C. Sept. 25, 2017).

Despite Defendants' rather conclusory statements that claim preclusion applies to bar this case, as well as all of the parties' incorrect reliance on Maryland law instead of D.C. law to determine the preclusive effect of the second D.C. court case in this forum, the Court will give the issue its serious consideration.

The District of Columbia adopts the transaction test to determine whether two cases involve the same claim: a claim or cause of action comprises "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Smith*, 562 A.2d at 613 (quoting Restatement (Second) of Judgments § 24(1) (Am Law Inst. 1982)). A claim raised under two different bodies of law in the respective cases does not convert one claim into two. *Id.* at 614 (barring subsequent claim asserted under Maryland law even though first claim was asserted under D.C. law). Here, it is clear that the second D.C. court case and the one here arise from the

7

same exact transaction—the loan, the closing, and the allegedly invalid Deed of Trust and other closing documents.

Jones argues that this case does not involve the same claim because the second D.C. court case was filed against the D.C. Government, who is not a party here, and it sought declaratory judgment pursuant to a specific D.C. statute, which is not the remedy requested here. ECF No. 13 at 12. Jones points to Judge Demeo's finding that Jones's complaint did not allege fraud as further indication that this case, which does allege fraud, is "factually and legally distinct" from the second D.C. court case. *Id.* Jones's arguments, however, are unavailing. It does not matter if Jones's D.C. case was brought under a D.C. law and this case brought under Maryland or federal law, nor does it matter that the D.C. Government is not a party here. Neither of those facts makes this case a different claim or cause of action for purposes of claim preclusion. What matters is that the claims arose from the same transaction; it is the factual basis that makes two claims the same, not the specific legal theories utilizing those facts. *See Smith*, 562 A.2d at 613. Claim preclusion acts to bar all issues arising from the same claim, even if those issues were not raised in the first case. *Carr*, 701 A.2d at 1070. Because both cases assert rights arising out of the same transaction and factual circumstances, they involve the same claims.

In addition to the same claims, this case involves the same parties as the second D.C. court case, except for Aronson. The D.C. case was brought against SLG and PBX, both parties here. Again, it is irrelevant that the second D.C. court case was also brought against the D.C. Government. Although Levin and Ruben were not named defendants in the D.C. case, they are in privity with SLG and PBX, respectively. "Claim preclusion will bar relitigation of the claims if the parties to the second suit were in privity with the parties to the first." *Smith*,

562 A.2d at 615 (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Id.*

Levin is being sued because of his position as sole-owner and president of SLG. Jones alleges that "Levin primarily orchestrated and directed the fraudulent acts complained of herein." ECF No. 1 ¶ 16. Thus, Levin is in interest with SLG and represents the same legal rights now regarding the alleged fraudulent transaction. Ruben is being sued in his capacity as a PBX employee. In her Complaint under the "Parties" heading, Jones refers to Defendant PBX, and does not even name Ruben separately. Therefore, Ruben is in interest with PBX and represents the same legal rights with regard to the closing transaction in dispute here. Aronson, however, is being sued in his capacity as the trustee of the Deed of Trust, a position potentially at odds with SLG. Aronson, therefore, is not in interest with SLG and does not represent the same legal rights with respect to the disputed transaction.

The third element is where SLG and Levin run into trouble. Because the dismissal by Judge Demeo was appealable, it was final. *See Crockett*, 2017 WL 4286184, at *5. Where things become stickier is whether the dismissal was "on the merits." The relevant rule to make that determination is D.C. Rule of Civil Procedure 41(b), which states that, [u]nless the dismissal order states otherwise or as provided elsewhere in the[] rules, a dismissal by the court—except a dismissal for lack of jurisdiction or failure to join a party under Rule 19—operates as an adjudication on the merits." D.C. Super. Ct. R. Civ. P. 41(b)(1)(B). Therefore, the dismissal with prejudice of the second D.C. court case will be considered on the merits so long as it was not based on a lack of jurisdiction or failure to join a party.

To address that issue, the Court must examine the decision issued by Judge Demeo. The decision deals with separate motions to dismiss by SLG and PBX. SLG's motion to dismiss was based on the first D.C. court case that dismissed Jones's complaint against SLG pursuant to the forum selection clause contained within the promissory note. Judge Rankin found the clause valid and dismissed the case accordingly. ECF No. 7-1. In the second D.C. court case, Judge Demeo first addressed the question of whether SLG was an indispensable party to the law suit, which she found it was. ECF No. 7-2 at 4. She then went on to find that Jones was bound by the forum selection clause in that case because (1) the forum selection clause was valid (as found by Judge Rankin), and (2) the dispute at issue there arose under the promissory note. *Id.* As such, SLG could not be made a party to the litigation in the D.C. forum. *Id.* Because SLG could not be made a party, and equity and good conscience dictated that the case not proceed without it, the court found that the complaint must be dismissed. *Id.* at 5.

The court's dismissal with prejudice as to SLG was therefore based on a lack of the court's jurisdiction—the validity of the forum selection clause and its dictate that any disputes arising under the note be filed in designated courts in Maryland. It was not, then, a judgment on the merits under Rule 41(b). Accordingly, claim preclusion does not bar the claims alleged against SLG and Levin.

The same is not true, however, for the claims against PBX and Ruben. PBX's motion to dismiss in the second D.C. court case was based on Jones's failure to state a claim against PBX. The court found that Jones failed to allege sufficient facts as to the ways in which PBX was a necessary party and made no request for relief from it. ECF No. 7-2 at 6–7. Accordingly, the court dismissed the complaint as to PBX with prejudice. Because the dismissal with prejudice as to PBX was based on Jones's failure to state a claim pursuant to Rule 12(b)(6), and not for a lack

10

of jurisdiction, the dismissal was on the merits. Therefore, claim preclusion does bar the instant case from moving forward against PBX and Ruben.

Based on the foregoing discussion, the Court will dismiss the Complaint with prejudice as to PBX and Ruben. Because SLG, Levin, and Aronson remain as Defendants, the Court will discuss the merits of their additional arguments.

### 5. Splitting Causes of Action

SLG and Levin argue that this case should be dismissed based on the prohibition against splitting causes of actions. ECF No. 7 at 9–11. This argument fails for the same reasons that claim preclusion does not apply. Because the second D.C. court case's dismissal was not a judgment on the merits, notwithstanding it being dismissed with prejudice, the judgment in the prior case does not have the effect SLG asserts it does to prevent Jones from filing her Complaint in this case while the prior case is pending appeal. The case authority relied upon by SLG does not support its proposition that a general prohibition against splitting causes of action is applicable here. *See* ECF No. 9–11. Although SLG is correct that Maryland courts have stated clearly that parties must bring legal theories together in one case and not present them in piecemeal fashion in separate actions, it provides no applicable authority to suggest that a court cannot hear a case against a defendant when that defendant is involved in another case brought by the plaintiff that is pending appeal, when claim preclusion does not apply. SLG cites two cases, *Levin v. Friedman*, 317 A.2d 831 (Md. 1974), and *Horowitz v. Continental Casualty Co.*, No. CV DKC 14-3698, 2016 WL 3597575 (D. Md. July 5, 2016), out of context. *See* ECF No. 7 at 10. In *Levin*, despite stating the general proposition that "a single cause of action or an entire claim cannot be split or divided into separate suits," the court's decision was not based on any concern for the splitting of causes of action but instead was based on the court's determination of

11

the applicable statute of limitations. *See Levin*, 317 A.2d at 835–36. In *Horowitz*, the quotation cited by SLG and Levin speaks to the court's concern over the plaintiffs' multiple filings arising out of the same underlying facts, but that concern was part of the court's discussion about the applicability of sanctions, not about whether the court could hear the case before it. *See Horowitz*, 2016 WL 3597575, at *5. Because claim preclusion does not apply to bar this case as against SLG and Levin, and without any authority preventing Jones from moving forward based on the case pending appeal in D.C., the Court rejects this as a ground to dismiss Jones's Complaint.

### 6. The RICO Claims

SLG, Levin, and Aronson all allege that Count IV alleging RICO violations should be dismissed because it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Complaint fails to allege sufficient facts showing that there was an "enterprise" or a "pattern of racketeering activity." ECF Nos. 6 at 3; 7 at 11–13.

To establish a civil RICO violation under 18 U.S.C. § 1962(c),[3] a plaintiff must sufficiently plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). Defendants argue that Jones fails to allege sufficient facts that Defendants were engaged in an enterprise. ECF No. 7 at 11. An "enterprise," as defined by the RICO statute, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

---

[3] In relevant part, 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

It is "an ongoing organization, formal or informal, in which the various associates function as a continuing unit." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "The enterprise must be distinct from the persons alleged to have violated § 1962(c)." *Id.*

In her Complaint, Jones states that "Defendants willfully combined, conspired, and agreed, as evidenced by their interrelated actions, to form an association in fact which constitutes an enterprise under 18 U.S.C. § 1961(4)." ECF No. 1 ¶ 86. Aside from this conclusory statement, Jones fails to assert any facts from which the Court could reasonably infer that Defendants "willfully combined, conspired, and agreed" to form an enterprise. For example, Jones states that "PBX prepared the pertinent loan documents and oversaw the illegal closing via its illegal notary public agents, and along with co-defendants caused the false deed and false Security Affidavit to be filed with the DC Recorder of Deeds." *Id.* ¶ 87. Jones also states that "[t]he Lender falsified, in conjunction with co-defendants, the recorded Deed of Trust." *Id.* ¶ 89. These statements provide no specific facts to even suggest that Defendants functioned as a "continuing unit," nor do they assert facts that distinguish the conduct of the alleged enterprise from the conduct of the individual Defendants. Jones argues that elsewhere in the Complaint the allegations sufficiently demonstrate "joint behavior of Defendants. Multiple connected individuals—around the pattern of fraudulent behavior designed to advance financial fraud." ECF No. 14 at 20–21. None of those statements or any other in the Complaint, however, meet the Rule 12(b)(6) standard to show that Defendants, distinct from their individual conduct, associated and functioned as a continuing entity to accomplish the fraud and other claims asserted.

Jones's RICO claim also fails to allege sufficient facts to show a "pattern of racketeering activity." A "pattern of racketeering activity" "requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5), that "amount to or pose a threat of continued criminal activity." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The "continuity" requirement can be satisfied by allegations of either "closed-ended continuity" or "open-ended continuity." *Id.* Close-ended continuity "may be established by a 'series of related predicates extending over a substantial period of time.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242)). Conduct that extends only over a few weeks or months "and threatening no future criminal conduct do[es] not satisfy the requirement." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242)). Open-ended continuity "may be established where, for example, the 'related predicates themselves involve a distinct threat of long-term racketeering activity,' or where the predicate acts 'are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242–43)).

In her Complaint, Jones asserts that

> Defendants' conduct is consistent with a pattern of racketeering activity as defined in 18 U.S.C. § 1962(5) by individually and collectively committing the predicates acts of fraud, deceit, and filing false documents in violation of, *inter alia*, 18 U.S.C. § 1341 in the use of the banking system's electronic wire transfer service for advancing, furthering or carrying out the scheme to defraud, § 1343 (relating to wire fraud) and § 1344 (relating to financial institution fraud).

ECF No. 1 ¶ 84. Assuming she states sufficient facts as to the named predicate acts,[4] she does not state any facts to meet the continuity requirement. Jones makes no allegations that the alleged misconduct extended over a substantial period of time or threated any future criminal

---

[4] The Court draws no conclusion as to the question of whether Jones's Complaint sufficiently pleaded the requisite predicate acts.

conduct. She also makes no allegations that the alleged misconduct "involved a distinct threat of long-term racketeering activity" or were part of any entity's regular way of doing business or conducting the alleged enterprise.

In her Opposition brief, Jones asserts for the first time that her RICO claim is not premised on a pattern of racketeering activity but is instead premised on the unlawful collection of a debt, which has no "pattern" requirement. ECF No. 14 at 17 (citing *Eyler v. Vista Court, L.L.C.*, No. RWT 07cv2383, 2008 WL 4844962 (D. Md. Aug. 26, 2008) (Titus, J.). Nowhere in Jones's Complaint, however, does she allege that her RICO claim is based on the unlawful collection of a debt. Only in her Opposition does she explain that "[t]he fraudulent collection process began with the falsification of the security instrument, the falsified Affidavits, the record of these falsified documents, including a false deed of trust, a corresponding foreclosure, and a filed confession of judgment in the Prince George's Court, which initially forced Plaintiff into bankruptcy." *Id.* (citing ECF No. 1 ¶¶ 39, 40, 42, 43, 45, 46, 47, 49, 89, 90, 91, 92, 93, 96, 102, 104, 105). The Complaint clearly falls short of the Rule 12(b)(6) standard "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

But even if Jones filed her claim based on the collection of an unlawful debt, her Complaint would still fail. An "unlawful debt" is

> debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). The Complaint plainly does not make any allegations from which the Court could infer that the loan made to Jones is unenforceable according to any state or federal usury law and certainly not that the loan was made at a rate twice that of the enforceable rate. Assuming this loan would be subject to usury laws in the first place, the Complaint asserts that the interest rate was thirteen percent, ECF No. 1 ¶ 1, but the maximum interest rate is twenty-four percent under both Maryland law, Md. Com. Code Ann. § 12-103(c)(1), and D.C. law, D.C. Code § 28-3301(c). Accordingly, Jones's Complaint fails to state a RICO claim under either theory of a pattern of racketeering activity or collection of an unlawful debt.

Because Jones fails to allege sufficient facts to satisfy Rule 12(b)(6) as to the enterprise and pattern of racketeering activity elements of RICO, the Court will dismiss Count IV of the Complaint as to all Defendants. With this action, the only claims left are those anchored in state law: (1) deceit and fraud, (2) intentional or negligent misrepresentation, (3) breach of trustee's fiduciary duty, and (4) breach of contract. As such, this Court will follow the well-established custom of dismissing the remaining state law claims without prejudice when the only federal claim providing for subject matter jurisdiction has been dismissed. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, this Court will dismiss all remaining claims as to SLG, Levin, and Aronson.[5]

---

[5] The Court notes that even if *res judicata* did not apply to bar this case against PBX and Ruben, the case would still be dismissed as to those Defendants based on the failure of the RICO claim.

### 7. Conclusion

Based on the foregoing, this Court will dismiss Jones's Complaint in its entirety as to all Defendants. An order to that effect will accompany this Opinion.

Date: February 1, 2018                                     /s/
                                                    ROGER W. TITUS
                                                    UNITED STATES DISTRICT JUDGE